**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **INTERLINK PRODUCTS INTERNATIONAL, INC.,**<br><br>              Plaintiff,<br><br>     v.<br><br>**WADE CROWFOOT, et al,**<br><br>              Defendants. | **Civ. No. 20-7654 (ES) (MAH)**<br><br>**(consolidated with 20-10566)**<br><br>**OPINION** |

**MCNULTY, DISTRICT JUDGE**

Before the Court is the motion of Xavier Becerra, Drew Bohan, and Melissa Rae King (collectively, "Defendants") to dismiss the complaint. (*Interlink II*, 20cv10566, DE 12).[1] Also pending before the Court is the motion of plaintiff

---

[1] Citations to the record will be abbreviated as follows:

*Interlink II* = *Interlink Products International, Inc. v. Becerra*, No. 20-10566 (D.N.J.), commenced on August 14, 2020

Compl. or Complaint = Interlink's complaint filed in *Interlink II*, DE 1

Compl. Ex. A = A letter from Lea Haro, a supervisor at the Office of Compliance Assistance and Enforcement of the California Energy Commission, to Eli Zhadanov, the president of Interlink, dated February 26, 2020, *Interlink II*, DE 1-1

Compl. Ex. B = An email from Jared Babula, a representative from the California Energy Commission, to Jason Lattimore, an attorney representing Interlink, dated June 4, 2020, *Interlink II*, DE 1-2

Compl. Ex. C = An email from Amazon to Interlink, dated July 22, 2020, *Interlink II*, DE 1-3

Compl. Ex. D = An email from the Home Depot to Interlink, dated July 24, 2020, *Interlink II*, DE 1-4

PI = Interlink's motion for preliminary injunction, *Interlink II*, DE 4

PI Mov. Br. = Interlink's moving brief in support of its motion for preliminary injunction, *Interlink II*, DE 4-1

Interlink Products International, Inc. for a preliminary injunction. (*Interlink II*, DE 4). For reasons set forth below, the Court will transfer venue of this case to the Eastern District of California.

## I. Background

Interlink is a New Jersey corporation that develops, manufactures, and markets shower and bath products. An unspecified percentage of its sales are conducted through online platforms, such as Amazon.com and HomeDepot.com. (Compl. ¶¶ 9 & 17–18). When purchases are made, products are shipped either by common carriers from Interlink's warehouse in New Jersey, from Amazon's warehouses located in various states, or perhaps from Home Depot, although that is less clear. (*Id.* ¶¶ 17–18). None of the products at issue in this case ship from within California. (*Id.* ¶ 17).

On February 26, 2020, Interlink received a letter from the California Energy Commission ("CEC"), notifying Interlink that its Hydroluxe brand shower head model 1433 and AquaDance brand shower head model 4328 ORB ("Shower Heads") were noncompliant with California's appliance efficiency regulations, and that it was illegal to sell them or offer them for sale in California. (*Id.* ¶ 28; Compl. Ex. A). According to that letter, someone acting on behalf of the CEC ordered the Shower Heads from Amazon.com. (Compl. ¶ 29). After testing the Shower Heads, the CEC determined that they failed to meet California's flow rate, labeling, and product registration requirements. The letter added that products manufactured and marketed by Interlink failed to comply with California's labeling and compliance certification requirements. (*Id.* ¶¶ 29–30).

---

PI Opp. Br. = Defendants' brief in opposition to Interlink's motion for preliminary injunction, *Interlink II*, DE 18

MTD = Defendants' motion to dismiss, *Interlink II*, DE 12

MTD Mov. Br. = Defendants' moving brief in support of their motion to dismiss, *Interlink II*, DE 12-2

MTD Opp. Br. = Interlink's brief in opposition to Defendants' motion to dismiss, *Interlink II*, DE 14

Interlink argued to the CEC that it "does not sell or offer for sale the [S]hower [H]eads at issue in the State of California" and that all of its sales of the Shower Heads occurred outside of California.[2] (*See id.* ¶¶ 33, 44–45; Compl. Ex. B). After failed attempts to resolve its disagreement with the CEC, Interlink initiated its first action on June 23, 2020, alleging that the CEC officials[3] engaged in extraterritorial enforcement actions and violated Interlink's rights protected under the Due Process Clause and the Dormant Commerce Clause. (DE 1 ¶ 8). While this action was pending, Interlink received an emailed notice from Amazon.com on July 22, 2020, stating that Interlink's products may not be compliant with California energy efficiency regulations. (Compl. ¶ 53; Compl. Ex. C). On July 24, 2020, Interlink received an email from Home Depot, stating that Home Depot was contacted by the CEC regarding the Interlink products' alleged violation of California's appliance efficiency regulations. (Compl. ¶ 54; Compl. Ex. D). Soon thereafter, Interlink's Shower Heads were blocked on Amazon.com from sale to customers with shipping addresses in California. Home Depot allegedly took the more drastic step of deactivating Interlink's account, effectively removing Interlink's products from HomeDepot.com, irrespective of the customer's location. (Compl. ¶¶ 16 & 53–54).

On August 14, 2020, Interlink commenced the above-captioned second action, which I have deemed *Interlink II*, further challenging the CEC's enforcement actions. That second complaint asserts essentially the same

---

[2]  This factual contention imports a legal conclusion. Interlink is not saying that all of its *customers* are in New Jersey or that none of them are in California; if that were true, little if anything would be at stake in this lawsuit. What Interlink is saying is that, no matter where the customer is located, the site of any "sale" must be New Jersey, because the products originate from its New Jersey warehouse. (*See* Compl. ¶ 43 (stating that "[t]hus, where goods purchased through the internet are shipped from New Jersey to customers in other states, the sales are deemed to have taken place in New Jersey, where title passes.")).

[3]  The original defendants in the first action were Wade Crowfoot, Drew Bohan, Melissa Rae King, and Lea Haro. (DE 1 ¶¶ 2–5). As discussed below, Interlink's claims against Crowfoot and Haro were dismissed without prejudice. (DE 13 ¶ 3).

claims under the Dormant Commerce Clause and the Due Process Clause, and adds that Defendants' "enforcement actions against Interlink for its prior conduct [are] void for vagueness." (*See id.* ¶¶ 61–76). On August 19, 2020, Interlink filed a "motion for a temporary restraining order and/or preliminary injunction," seeking to enjoin Defendants' enforcement actions and to compel Defendants to rescind the cease and desist letters sent to the online platforms. (PI at 2). On August 28, 2020, Defendants filed a motion to dismiss Interlink's second complaint. (MTD). On September 8, 2020, the Court approved the parties' stipulation consolidating the two actions. (DE 13 ¶ 1). As is customary in this district, the consolidated case continues under the earlier docket number; the operative complaint, however, is the verified complaint filed in *Interlink II*.

In their motion to dismiss, Defendants argue that the Complaint should be dismissed because (1) the Court lacks personal jurisdiction over Defendants, (2) Interlink's claims against California Attorney General Becerra are barred by the Eleventh Amendment, (3) Interlink's claims against Defendants in their official capacities for monetary damages are also barred by the Eleventh Amendment, and (4) venue should not lie in the District of New Jersey. Having considered the parties' argument presented in their submissions and at oral argument, the Court will transfer the case to the Eastern District of California.

## II.    Analysis

While "[t]he question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue . . . a court may reverse the normal order of considering personal jurisdiction and venue." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). I will here address the venue issue first. Because Defendants have demonstrated that a transfer of venue is appropriate under 28 U.S.C. § 1404(a), I will not reach the other issues raised in Defendants' motion to dismiss,[4] or Interlink's motion for preliminary injunction.

---

4    The transfer to California should eliminate the personal jurisdiction issue.

4

Regarding venue, I pause to note that my analysis has been hampered by a lack of clarity about whether and how the Shower Heads are shipped and sold (or offered to be shipped and sold) to customers in California. Interlink does not regard this fact as important; as a matter of California law, it says, title passes when Interlink ships goods from its New Jersey warehouse to customers, and the customer's location therefore does not matter. As a result, Interlink's argument has a certain "I shot an arrow in the air" quality.

It is not clear who is shipping the goods, from where, and to whom. Interlink alleges only that it does not ship goods *from* California, and that *when* goods are ordered directly from Interlink online, Interlink ships the order from its New Jersey warehouse.[5] The extent to which this is happening with respect to California customers is unstated. Nor does Interlink connect that proposition to its major complaint, which is that California is interfering with orders placed at and presumably shipped from Amazon and HomeDepot, which are not alleged to be in New Jersey.

The only sales specifically identified are two purchases by the CEC itself, which purchased Shower Heads for testing purposes. CEC did not purchase them directly from Interlink, but through Amazon.com.

### A.     Venue Under § 1391(b)

Defendants argue that the case should be dismissed under Federal Rule of Civil Procedure 12(b)(3) because venue is improper in New Jersey pursuant

---

[5]     The following quotations are typical. "Thus, where goods purchased through the internet are shipped from New Jersey to customers in other states, the sales are deemed to have taken place in New Jersey, where title passes." (Compl. ¶ 43.) "Products purchased from Interlink online are shipped by common carrier from Interlink's warehouse located in Linden, New Jersey. Some of Interlink's products also ship from Amazon.com warehouses located in various states. None of the showerheads at issue in this case ship from within California." (Compl.¶¶ 21–23). In Interlink's opposition brief to the MTD, it states that "Defendants knew well, and were on clear notice from Interlink's communications and the pending litigation, that Interlink's products on HomeDepot.com were stored in and shipped from Interlink's warehouse in New Jersey . . . ." (MTD Opp. Br. at 17–18). Again, it appears plausible that all of Interlink's products begin their journeys at Interlink, which manufactures them. What is not clear, however, is the extent to which orders, and particularly orders by California customers, are being filled and shipped from inside or outside New Jersey.

to 28 U.S.C. § 1391(b)(2); alternatively, they argue that the case should be transferred to the Eastern District of California pursuant to either 28 U.S.C. § 1404(a) or § 1406(a). (MTD Mov. Br. at 21–24).

I first consider whether venue is proper in New Jersey, because if it is not, the issue is settled. Because the defendant has the burden, and because certain facts are unclear on this record, I will not transfer or dismiss on the basis of improper venue.

As for the propriety of venue, the relevant part of 28 U.S.C. § 1391(b) provides that a civil action may be brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> 
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> 
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

As for § 1391(b)(1), Interlink does not argue, nor could it, that venue is proper in New Jersey. It is undisputed that Defendants in their official capacities reside in the Eastern District of California, not the District of New Jersey. (*See* MTD Mov. Br. at 24).

Venue under § 1391(b)(2) is the source of the parties' disagreement. Defendants argue that "[a]ll of the conduct of the California officials occurred in California, in an effort to enforce California law, and keep [Interlink's] illegal products out of California." (*Id.* at 21). Interlink, on the other hand, argues that it "does not allege Defendants interfered with or have taken any unconstitutional action to regulate any of Interlink['s] sales occurring in California." (MTD Opp. Br. at 24). Instead, Interlink argues that its claims "only concern[ ] sales outside of California, including in New Jersey"; thus "[t]he bulk of events giving rise to Interlink's claims occurred in New Jersey." (*Id.* at 24–25).

The question under § 1391(b)(2) is whether a "substantial part of the events or omissions giving rise to the claim" occurred in New Jersey. To determine "whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994). And indeed the parties' disagreement regarding venue overlaps substantially with the underlying legal issues in this case. Legally, the dispute is over whether Interlink's Shower Heads are products "sold or offered for sale in California" by virtue of being ordered online from Interlink, which is located in New Jersey (*See, e.g.*, PI Mov. Br. at 8; PI Opp. Br. at 15–19). As Interlink sees it, its sales, regardless of whether they are sales to California customers, are consummated outside of California.

Factually, the nature of the dispute is somewhat unclear. I accept allegations in the Complaint as true, *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994), but find them to be sparse and incomplete. The burden of proof on venue under § 1392(b), however, falls upon the defendant who challenges it. *See Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir.1982); *Simon v. Ward*, 80 F. Supp. 2d 464, 466–68 (E.D. Pa. 2000) (reviewing the substantial dispute among treatises and courts on the burden of proof in venue contests, and acknowledging *Myers* as the law of this circuit).

First, the only sales concretely alleged are the small test purchases by the CEC. CEC, however, ordered the Shower Heads not from Interlink but from Amazon.com. It is not alleged that Amazon shipped those Shower Heads from New Jersey. Interlink alleges generally that to the (unspecified) extent it ships from its New Jersey warehouse, the sale occurs in New Jersey as a matter of California law—a venue-creating event. Interlink does not, however, forthrightly allege that it does ship, will ship, or has shipped directly from New Jersey to customers in California. That factual gap is significant to a court attempting to determine whether a "substantial part of the events or omissions giving rise to

7

the claim" occurred in New Jersey.[6]

Second, and relatedly, it appears that when a customer orders Shower Heads on Amazon.com, Amazon ships from its own warehouse. There is no allegation that the particular Amazon warehouse or warehouses involved here are in New Jersey. Assume, then, that Amazon maintains some inventory of Shower Heads (with or without taking title), takes orders, and ships the goods. To be sure, all of the goods ultimately originate from Interlink, the manufacturer. But Interlink's theory is that when an order is filled and goods are shipped to a customer, a sale occurs at *that* time and place. As to Amazon sales, that time and place would be the time of shipment from Amazon's warehouse. So the allegation that Interlink has a New Jersey warehouse and that some percentage of shipments emanate from there is insufficient to establish that Interlink's point is pertinent to its claims against the California authorities.

Third, setting those factual uncertainties aside, I consider Interlink's legal argument that sales must be deemed to occur at its New Jersey facility. Relying on the California Uniform Commercial Code ("UCC"), publications from the California Department of Tax and Fee Administration, and California courts' interpretation of the relevant state laws, Interlink argues that "sales" occur "at the time and place of shipment." (PI Mov. Br. at 8; *see also id.* at 15–21 & 28–30). Thus, Interlink argues, whenever it shipped its products from its warehouse in New Jersey to a California address (assuming that occurred), those "sales" occurred in New Jersey for purposes of venue. That is the same theory on which Interlink bases its claims on the merits: *i.e.,* that CEC's enforcement actions against such New Jersey "sales" were impermissibly extraterritorial and hence unconstitutional under the Dormant Commerce

---

[6]   The dispute, realistically speaking, must implicate sales to California customers. The complaint and exhibits reveal that CEC seeks to regulate sales of noncompliant appliances to California customers; CEC does not, and does not seek to, bar sales to customers in other states. To the extent that Home Depot, for example, allegedly overstepped by barring all sales of Interlink products, the dispute would seem to be with Home Depot, which is not alleged to be headquartered in New Jersey.

Clause and Due Process Clause. (*See id.* at 21–22 & 25–26).

In response, Defendants argue that "even if the transfer of title" of the Shower Heads occurred in New Jersey, it may exercise its authority because "at least a portion of the sale occurred in California" when the Shower Heads were ordered and acquired by a customer in California. (PI Opp. Br. at 15). That contention is more relevant to a discretionary transfer of venue, *see infra*; for venue to be permissible in New Jersey, it is necessary only that a substantial part, not all, of the events in suit occurred here. Defendants further argue, however, that Interlink's view of the law is wrong. Whether a product is "sold or offered for sale in California" is not, as Interlink would have it, governed by California's Revenue and Tax Code or its UCC. (*Id.* at 14, 15 n.5 & 35–36). In their view, an internet sale to a California resident would fall within the definition of a "sale or offer to sell" under the Warren-Alquist Act, and in particular Article 4 of § 1601 of the California Code of Regulations, 20 C.C.R. § 1601. They are not, they say, attempting to regulate Interlink's conduct in New Jersey; Interlink may manufacture whatever shower heads it wishes. CEC is only ruling that the goods may not be sold to customers in California because they do not comply with California law.

Under § 1392(b)(2), when a plaintiff challenges the constitutionality of a state law or policy, it is relevant to the venue analysis whether the plaintiff mounts a facial challenge or an as-applied challenge.

As to a facial challenge to a state statute, "[c]ourts are split as to whether venue is appropriate in the district of the state capital . . . ." *Hat v. Landry*, No. 19-0322, 2020 WL 4370129, at *15 (M.D. La. July 30, 2020) (collecting cases).[7]

---

[7]  Some, including district courts within the Third Circuit, apply the principle that "where plaintiffs challenge state-wide policies, and not merely the actions of state officials in a single county, venue is proper pursuant to [§] 1391(b)(2) in the district where those policies are developed." *Chester v. Beard*, No. 07-4742, 2008 WL 2310946, at *8 (E.D. Pa. June 2, 2008); *see also Hat*, 2020 WL 4370129, at *16; *Stanton-Negley Drug Co. v. Pennsylvania Dep't of Pub. Welfare*, No. 07-1309, 2008 WL 1881894, at *5 (W.D. Pa. Apr. 24, 2008) (stating that the venue is proper in the district where the policies are implemented and where the policymakers reside, even though plaintiffs may feel the impact of those policies in another district); *Perkins v. Snider*,

Interlink, however, does not bring a facial challenge to California's appliance efficiency laws in blanket fashion. (*See* MTD Opp. Br. at 24–25). Its challenge is as-applied to itself. For an as-applied challenge to a state law, the split in authority is less acute. Courts are more inclined to hold that venue is permissible in the district where the plaintiff suffers harm. *See, e.g., Adams Outdoor Advert. Ltd. P'ship v. Pennsylvania Dep't of Transportation*, 307 F. Supp. 3d 380, 396–97 (E.D. Pa 2018) (holding that when the plaintiff asserts an "as applied" challenge, "a substantial portion of the events giving rise to" its First Amendment claim occurred where the plaintiff's "freedom of speech was allegedly suppressed"); *Kalman v. Cortes*, 646 F. Supp. 2d 738, 742 (E.D. Pa. 2009).

Interlink brings an as-applied challenge to regulation of sales which, on Interlink's view of the law, occurred in New Jersey. Interlink's location in New Jersey and shipment of products from New Jersey to California would have more than a "tangential connection with the dispute in litigation." *See Cottman*, 36 F.3d at 294. Assuming such shipments from New Jersey to California occurred or will be occurring, the court could find that the impact is felt here. As I say, I would require development of a more complete factual picture in order to rule definitively that venue in New Jersey is permissible. I will state frankly that the factual omissions here appear to be tactical, and could plausibly be remedied by amendment or supplied by discovery.

To say that venue is *not* permissible in New Jersey would, of course, dispose of the issue. Because that cannot be said without further development of the record, I do not dismiss or transfer the case on the basis of improper

---

No. 94-4785, 1994 WL 530045, at *2–3 (E.D. Pa Sept. 2, 1994) (collecting cases and holding that venue is proper where the policymakers are located when the plaintiff is objecting to state-wide policies and "not merely to the actions of state employees" in a specific county). Other courts, however, take a broader approach and hold that venue is proper for a facial challenge not only in the district where the state government sits, but also "where the effects of the challenged regulations are felt." *Farmland Dairies v. McGuire*, 771 F. Supp. 80, 82 n.3 (S.D.N.Y. 1991); see also *Emison v. Catalano*, 951 F. Supp. 714, 721–22 (E.D. Tenn. 1996).

venue. I will therefore consider the alternative request to transfer venue on discretionary grounds under 28 U.S.C. § 1404(a).

### B. Transfer of Venue Under § 1404(a)

Section 1404(a) permits a district court "[f]or the convenience of parties and witnesses, in the interest of justice" to transfer an action to another district "where it might have been brought." Section 1404(a) exists to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Kremer v. Lysich*, No. 18-03676, 2019 WL 3423434, at *3 (D.N.J. July 30, 2019) (citations and internal quotation marks omitted); *see also Teleprompter Corp. v. Polinsky*, 447 F. Supp. 53, 55 (S.D.N.Y. 1977) ("Where . . . defendants have challenged a court's power over their persons and, at same time, have moved alternatively for transfer, the interests of judicial economy are best served by initial address of the transfer issue") (citing *United States v. Berkowitz*, 328 F.2d 358 (3d Cir.) (1964)). To that end, district courts are vested with "a large discretion" to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1045 (3d Cir. 1973); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

In determining whether transfer is appropriate under § 1404(a), the two threshold questions are whether (1) venue is proper in the transferee district, and (2) the transferee district can exercise personal jurisdiction over all parties. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970). As discussed above, venue would be proper in the Eastern District of California pursuant to § 1391(b)(1) because that is where Defendants, sued in their official capacities, reside. In addition, their challenged actions took place there. *See* 28 US.C. § 1391(b)(2). There appears to be no dispute that U.S. District Court for the Eastern District of California can exercise personal jurisdiction over Defendants.

If venue and personal jurisdiction in the requested district are proper,

then the Court must analyze a series of private and public factors to determine whether "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). There is "no definitive formula or list of factors" to consider in evaluating the three enumerated factors: convenience of parties, convenience of witnesses, and interests of justice. *Id.* The Third Circuit has, however, recognized a set of private interest factors and a set of public interest factors that have guided courts in most cases.

The private interest factors include (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) convenience of the witnesses; and (5) the location of books and records. *See id.*

The first two private factors, plaintiff's and defendant's choice of forum, are opposed: Interlink's choice of forum is New Jersey, and Defendants' is the Eastern District of California. In such a case, weight is generally given to the plaintiff's choice of forum, which is "a paramount consideration," *Shutte*, 431 F.2d at 25, that "should not be lightly disturbed," *Jumara*, 55 F.3d at 879. Nevertheless, a plaintiff's choice of venue is not necessarily decisive. *See Nat'l Prop. Inv'rs VIII v. Shell Oil Co.*, 917 F. Supp. 324, 327 (D.N.J. 1995). Courts afford a plaintiff's choice substantially less weight where, for example, the central facts of the lawsuit did not occur there. *See id.*

As for factor (3), the district where the claim arose, Interlink points to its shipment of products from New Jersey. It is true that Interlink's products, in the ultimate sense, originate in New Jersey. Its manufacture of such products in (and to some unspecified degree, shipment of products from) New Jersey is an important, but-for requisite of this controversy. But it is not in itself the source of Interlink's legal grievance. The central, allegedly wrongful acts and events giving rise *to the claims* were performed in California by California state officials. As Defendants correctly point out, "[a]ll of the conduct of the California officials occurred in California, in an effort to enforce California law,

and keep [Interlink's] illegal products out of California." (MTD Mov. Br. at 21). Accordingly, the Court finds that the generalized preference for plaintiff's choice of forum is substantially offset by the specifics of the claims in this case, which is a challenge to official action. The significant government actions of which the plaintiff complains occurred in defendant's chosen forum of California, not in New Jersey.

The last two private interest factors are not significant. They would sway the court only if there were witnesses who were unavailable in one of the forums, or if documents could be produced in one district but not the other. *Jumara*, 55 F.3d at 879. Neither side has raised such an argument. In fact, the parties appeared to agree at oral argument that, given the ongoing COVID-19 pandemic, depositions or even trial would likely be commenced virtually, and that neither party's choice of forum would substantially inconvenience the witnesses or interfere with discovery. These two factors, then, do not tip the balance either way.

Overall, I find that, although Interlink's choice of forum would prevail if considered alone, private interest factors 2 and 3 tip the balance slightly toward transfer.

The Court must next analyze the public interest factors, which include (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty arising from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the forums; and (6) the familiarity of the trial judge with the applicable state law. *See id.*

The Court finds that the first public interest factor, enforceability of a judgment, is neutral. "[W]hen both forums are federal district courts, this factor has little relevance because it is unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by one federal forum or the other." 17 Moore's Federal Practice – Civil § 111.13 (2020) (citing *Datasouth Comput. Corp. v. Three Dimensional Techs., Inc.*, 719 F. Supp. 446, 450 (W.D.N.C. 1989)). Assuming there is personal jurisdiction, *see infra,*

this factor should be neutral.

The second factor, namely, the public interest in conserving judicial resources, favors transfer. Defendants' motion to dismiss challenges this Court's personal jurisdiction over them. Interlink's claim of "minimum contacts" appears to be that its "sales" of Shower Heads, irrespective of the customers' location, must be deemed to have occurred in New Jersey. (*See supra*). For the reasons stated above, the situation is not quite as simple as that. Whether it creates the necessary contacts with these defendants, who are officials of California state government, is a debatable question, and one which might undermine any judgment this court could render.[8] At the very least, it would require jurisdictional discovery to develop a record.

Closely related is the Fifth Circuit's persuasive articulation of federalism-based constraints on the exercise of personal jurisdiction over another state's officials:

> Although Stroman has an interest in a convenient forum to pursue litigation, especially when it alleges harm from a constitutional violation, and Texas has an interest in providing a forum to redress the grievances of its citizens, subjecting the [Arizona] Commissioner to suit in the Southern District of Texas could lead to a multiplicity of inconsistent verdicts on a significant constitutional issue. If, as is likely, these courts reside in different federal circuits, only the Supreme Court could sort out the confusion. But if the cause of action is litigated in Arizona federal court, judicial efficiency and uniformity prevail. Important questions of federalism are present here, and thus, for this case, "the shared interest of the several states" is the most significant reasonableness consideration outlined by the Supreme Court. Federalism and state sovereignty are an essential part of the constraints that due process imposes upon personal jurisdiction. Those constraints do more than "protect [ ] the defendant against the burdens of litigating in a distant or inconvenient forum"; they also "ensure that the States through their courts, do not reach out

---

[8] The situation is *International Shoe* in reverse: The out-of state corporation is attempting to hale the state regulators into its preferred forum. *See International Shoe v. State of Washington*, 326 U.S. 310 (1945).

14

beyond the limits imposed on them by their status as coequal sovereigns in a federal system." . . . The effect of holding that a federal district court in the Southern District of Texas had personal jurisdiction over a nonresident state official would create an avenue for challenging the validity of one state's laws in courts located in another state. This practice would greatly diminish the independence of the states.

*Stroman Realty, Inc. v. Wercinski,* 513 F.3d 476, 488 (5th Cir. 2008). In short, the personal jurisdiction issue may turn out to be a knotty one, requiring evidentiary hearings, factual findings, and rulings of law, and federalism concerns would weigh against this court's assertion of personal jurisdiction over California officials in their official capacities.

The Eastern District of California, by contrast, undoubtedly has personal jurisdiction over Defendants. Transfer there obviates the need for the parties and the Court to expend limited resources on jurisdictional preliminaries.[9] *See, e.g., Auto-Wares, LLC v. Wis. River Co-op Servs.*, No. 09-702, 2010 WL 2508356, at *3 (W.D. Mich. June 17, 2010); *Multistate Legal Studies, Inc. v. Marino*, No. 96-5118, 1996 WL 786124, at *11 (C.D. Cal. Nov. 4, 1996) (collecting cases). And it sidesteps the federalism pitfalls recognized in *Stroman.*

The third public interest factor, court congestion, might arguably tip in favor of transfer, but I treat it as neutral; both courts, it appears, have quite enough to keep them busy. During the 12-month period ending June 30, 2020, the Eastern District of California had about 844 "actions per judgeship," while that number for the District of New Jersey was 1131.[10] The District of New Jersey, allocated seventeen judges, has six vacancies which qualify as judicial emergencies; the Eastern District of California, allocated six judges, has two

---

9   As noted above, those jurisdictional preliminaries also have the potential to deeply entangle the court in the merits merely in order to ascertain whether it can hear the case.

10   *Federal Court Management Statistics—Comparison Within* Circuit, 12-month period ending June 30, 2020, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0630.2020.pdf.

vacancies which qualify as judicial emergencies—about one third, give or take, in both districts.[11] The reality is that both districts have congested dockets; in such a situation, statistical data may not tip the balance either way. *See Eastman v. First Data Corp.*, No. 10-4860, 2011 WL 1327707, at *5 (D.N.J. Apr. 5, 2011). It is perhaps for that reason that it has been said that "relative congestion of the respective courts' dockets is not a factor of great importance on a motion to transfer." *Id.* (quoting *Kisko v. Penn. Cent. Transp. Co.*, 408 F. Supp. 984, 987 (M.D. Pa. 1976)) (internal quotation marks omitted). I treat this third factor as neutral.

The remaining public interest factors—the local interest in deciding local controversies at home, the public policies of the forums, and the familiarity of the trial judge with the applicable state law—all favor transfer.

Interlink stresses that this is not a diversity case and does not involve "complex issues of state law." (MTD Opp. Br. at 29). Rather, says Interlink, its claims are based on state officials' overreach, in violation of the Constitution. This Court and a California federal court, in Interlink's view, should be equally equipped to resolve such federal constitutional issues. (*Id.*).

I agree, but only to an extent. Cases brought under the court's diversity jurisdiction are not the only ones that may involve local interests or complex issues of state law. Cases brought under the federal-question jurisdiction, *see* 28 U.S.C. § 1331, may nevertheless hinge on state-law issues, and federal courts considering transfer of venue have not ruled out this factor in non-diversity cases, as plaintiff appears to suggest. *See, e.g., Kalawa v. United States*, No. 19-16089, 2020 WL 3603205, at *6 (D.N.J. July 2, 2020) (collecting cases and stating that, where "a federal court must apply the law of Maryland" for claims asserted under the Federal Tort Claims Act, the case should be transferred, particularly where "[f]ederal courts in Maryland are extremely familiar with Maryland tort law and better able to apply it than courts in New

---

[11] *Judicial Emergencies,* https://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies.

Jersey."); *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 19 (D.D.C. 1996) (transferring the case to Colorado and stating that "[w]hile this case deals directly with federal statutes and regulations, it may also, in part, involve the interpretation of Colorado law").

In this case, Interlink's claim, although constitutional, depends on its assertion that California is attempting to regulate a New Jersey sale. That contention depends in turn on the argument that that, under California law, "sales" occur at the "time and place of shipment" of Interlink's goods from New Jersey. Specifically, Interlink's claims seem to hinge initially on the interpretation of the phrase "sold or offered for sale in California" in Article 4 of § 1601 of the California Code of Regulations, 20 C.C.R. § 1601. (*See* Compl. ¶¶ 34–43; PI Mov. Br. at 6–9; 13–22; 28–30). According to Interlink, they also implicate the California UCC (Compl. ¶¶ 38–43; PI Mov. Br. at 8–9, 17–18 & 28); California tax law (Compl. ¶ 38; PI Mov. Br. at 8–9, 17 & 28); and California courts' interpretation of the relevant statutes and regulations (PI Mov. Br. at 8–9, 15–16, 18–19 & 29). Accordingly, I find that this case is one that involves "complex issues of [California] state law," a factor which favors transfer. *See Kalawa*, 2020 WL 3603205, at *6; *Castaldo v. Nissan Motor Corp. in USA*, No. 94-3811, 1994 WL 702908, at *2 (E.D. Pa. Dec. 13, 1994); *Myer v. Miriam Collins-Palm Beach Labs. Co.*, No. 85-3457, 1986 WL 3584, at *4 (E.D. Pa. Mar. 17, 1986). Those state-law issues, by the way, could turn out to be threshold issues by which the constitutional question is avoided entirely. If the definition of "sold or offered for sale" in the California efficiency regulations does not cover an internet sale from New Jersey, the case might be disposed of entirely on California state-law grounds.

More generally, rulings in this action have the potential to affect a state regulatory scheme, namely, California's appliance efficiency standards, which are part and parcel of the state's Warren-Alquist Act. (Compl. ¶¶ 22–27; PI Mov. Br. at 6–7). It is not merely, as suggested, that this Court lacks expertise on that issue; federal judges are perforce generalists, and are frequently called

on to master new areas of law. The problem is that Interlink seeks a ruling that would potentially impair the ability of California to regulate the efficiency of in-state appliances that arrived from elsewhere. That impairment, given the prevalence of internet buying in the modern economy, could be a substantial one. In drought-plagued California, the public interest in water conservation is a substantial one. *See generally* U.S. Geological Survey, California Water Science Center, *California Drought*, https://ca.water.usgs.gov/california-drought/. A court on the other side of the country may rightly be skeptical about whether it is the best arbiter of such questions.

There is also the question of uniformity. In the e-commerce era, many consumers may order appliances that ship from other states, where the laws are different. The consumer's home state, however, might see the need to promulgate its own efficiency standards, particularly in light of local conditions, such as a chronic water shortage. A definitive holding as to the meaning and scope of California's appliance efficiency law, a threshold non-constitutional issue, may bring order, if not uniformity, to any piecemeal constitutional challenges—or even possibly render them moot.

CEC has much to say about the merits, arguing that it does not overreach when it bars an item advertised on the internet from being sold and shipped to a customer in California. Interlink, too, has much to say about the definition of a sale under California law, the availability of alternative means of enforcement, the possibility that a California customer could buy goods for use elsewhere, and other issues. I do not resolve such issues. I am satisfied that in this case, which implicates a state's enforcement of its environmental laws, local interests and public policy also favor transfer. *See Hat*, 2020 WL 4370129, at *18 (holding that local interests favor transfer in a suit "aris[ing] out of arrests and environmental justice advocacy actions"). There is a public interest in a local adjudication of California's authority to regulate efficient water use.[12]

---

12    The federalism concerns of *Stroman Realty,* 513 F.3d at 488, quoted above,

On balance, the Court finds that the private interest factors are not strong, and that the public interest factors tip the scale in Defendants' favor. Because Defendants have demonstrated that a transfer of venue is appropriate under § 1404(a), the Court does not reach the other issues raised in Defendants' motion to dismiss. Defendants' claim that the court lacks personal jurisdiction, raised in the motion to dismiss and in opposition to the preliminary injunction, should be moot upon transfer.

### III. Conclusion

For the reasons stated above, Defendants' request to transfer venue to the United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1404(a) is **GRANTED**. An appropriate Order follows this Opinion.
Dated: November 16, 2020

/s/ Kevin McNulty

_____

**Kevin McNulty, U.S.D.J.**

---

although expressed in the context of personal jurisdiction, are relevant to venue as well.