UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERLINK PRODUCTS INTERNATIONAL, INC., <br><br>Plaintiff, <br><br>v. <br><br>WADE CROWFOOT, et al., <br><br>Defendants. | No. 2:20-cv-02277-DAD-CKD <br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS <br><br>(Doc. No. 65) |

This matter is before the court on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) filed on behalf of defendants. (Doc. No. 65.) On November 7, 2022, the pending motion was taken under submission on the papers. (Doc. No. 66.) For the reasons explained below, defendants' motion to dismiss will be granted.

**BACKGROUND**

**A.      Factual and Procedural Background**

In this consolidated action, plaintiff Interlink Products International, Inc., a New Jersey-based manufacturer of showerheads, challenges the constitutionality of state regulations adopted by the California Energy Commission ("CEC") that regulate the flow rate of showerheads "sold or offered for sale in California." (Doc. Nos. 1, 63.)[1] In the operative second amended

---

[1] On April 21, 2021, the court issued an order consolidating *Interlink Products International, Inc. v. Becerra et al.*, No. 2:20-cv-02283-KJM-CKD into this case. (Doc. No. 47 at 4.)

1

consolidated complaint ("SAC"), filed on October 7, 2022, plaintiff names two defendants, both in their official capacities:  defendant Drew Bohan, the executive director of the CEC, and defendant Maunee Berenstein, the assistant executive director for compliance assistance and enforcement at the CEC.[2]  (Doc. No. 63 at 1, ¶¶ 6–7.)  Plaintiff alleges as follows in the SAC.

Plaintiff is a New Jersey corporation with its principal place of business in Linden, New Jersey.  (*Id.* at ¶ 5.)  Plaintiff specializes in the development, production, and marketing of innovative shower and bath products.  (*Id.*)  All of plaintiff's offices and business operations are located in New Jersey.  (*Id.*)  Plaintiff sells showerheads directly to consumers from its New Jersey location, including through orders accepted on its website from anywhere in the United States.  (*Id.* at ¶¶ 22–23.)  Once a showerhead order is ready for shipping, it is picked up at plaintiff's New Jersey warehouse and shipped to the purchaser's designated recipient by common carrier.  (*Id.* at ¶ 24.)

On or about February 26, 2020, the CEC sent plaintiff a cease-and-desist letter notifying it of purported violations of California Code of Regulations, Title 20, §§ 1601–1609 ("California's appliance efficiency regulations") regarding the sale of two of plaintiff's showerheads.  (*Id.* at ¶¶ 2, 27; Doc. No. 1-1 at 2–4.)  The letter asserted that plaintiff's showerheads were in violation of the maximum flow rate that the CEC had set for showerheads—2.5 gallons per minute before July 1, 2016; 2.0 gallons per minute after July 1, 2016; and 1.8 gallons per minute after July 1, 2018—and demanded that plaintiff cease from selling the two showerheads in California.  (Doc. Nos. 1-1 at 3; 63 at ¶¶ 17, 27.)

Plaintiff also alleges that, according to the CEC's representatives, plaintiff's sales of its showerheads are subject to California's appliance efficiency regulations even though:  the showerheads are located in and sold from New Jersey at the time of sale, the showerheads are shipped by common carrier from outside California to recipients in California, and title passes

---

[2]  When plaintiff filed its first amended complaint it no longer named Melissa Rae King and Xavier Becerra as defendants in this action, yet the docket reflects that both of those individuals remain as named defendants in this action. (Doc. No. 49.) Plaintiff's SAC again omitted King and Becerra as named defendants. (Doc. No. 63.) The court will direct the Clerk of the Court to correct the docket to reflect that defendants King and Becerra were terminated from this action on May 25, 2021, when plaintiff's first amended complaint was filed.

outside California from the seller to the purchaser. (Doc. No. 63 at ¶ 28.) The CEC's representatives contend that such sales were "into California," and thus California's appliance efficiency regulations did apply to those sales. (*Id.*) In addition, the CEC's representatives "made clear" that it intended to demand payment of civil penalties from plaintiff for the alleged violations of California's appliance efficiency regulations. (*Id.* at ¶ 29.)

In its SAC, plaintiff asserts a single claim under 42 U.S.C. § 1983 for violation of the Commerce Clause, specifically, that the CEC's application of California's appliance efficiency regulations to sales of plaintiff's showerheads constitutes an extraterritorial regulation of commerce beyond California's borders. (Doc. No. 63 at ¶¶ 30–36.) Plaintiff seeks a declaratory judgment that application of California Code of Regulations, Title 20, §§ 1601–1609 to its sale of showerheads "shipped to recipients in California" violates the Commerce Clause and a permanent injunction prohibiting defendants from enforcing the regulations against plaintiff. (Doc. No. 63 at 9.)

On November 1, 2022, defendants filed the pending motion to dismiss the SAC. (Doc. No. 65.) On November 22, 2022, plaintiff filed its opposition to the motion dismiss, and defendants filed their reply thereto on December 6, 2022. (Doc. Nos. 67, 68.)

**B.      Regulatory Background**

California's Warren-Alquist State Energy Resources Conservation and Development Act authorizes the CEC to establish energy and water efficiency regulations. *See* Cal. Pub. Res. Code §§ 25000, *et seq.* In particular, California Public Resources Code § 25402 provides that the CEC shall "[p]rescribe, by regulation, standards for minimum levels of operating efficiency . . . to promote the use of energy- and water-efficient appliances whose use, as determined by the [CEC], requires a significant amount of energy or water on a statewide basis." Cal. Pub. Res. Code § 25402(c)(1)(A)(i). The statute provides that after the CEC has adopted a standard for the minimum level of operating efficiency for an appliance, "[a] new appliance manufactured on or after the effective date of the standard[] . . . shall not be sold or offered for sale in the state,

/////

/////

unless it is certified by the manufacturer of the appliance to be in compliance with the standard[] . . . ."[3] *Id.*

The CEC has promulgated regulations consistent with § 25402(c)(1)(A)(i), including regulatory authority over "[p]lumbing fittings, which are showerheads. . . ." Cal. Code Regs. tit. 20, § 1601(h). These regulations provide that a manufacturer must test its appliance using an allowable test method before certifying that it complies with California's appliance efficiency standards. *See id.* §§ 1603, 1606. After the CEC has approved a manufacturer's certification, the appliance will appear on the CEC's Modernized Appliance Efficiency Database System. *Id.* § 1606(b)–(c). An appliance must appear on the CEC's database before it can be "sold or offered for sale in California . . . ." *Id.* § 1608(a). The current showerhead efficiency standard is a maximum flow rate of 1.8 gallons per minute for showerheads manufactured on or after July 1, 2018. *Id.* § 1605.3(h)(5). For showerheads manufactured before July 1, 2018 and on or after July 1, 2016, the maximum flow rate is 2.0 gallons per minute. *Id.* As such, since July 1, 2018, it has been unlawful to sell, or offer to sell, in California a showerhead that has not been certified and listed in the CEC's database as compliant with the 1.8 gallons per minute efficiency standard. *See id.* § 1608(a).

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of

---

[3] On January 1, 2023, a new version of this subdivision went into effect, which added the following language:

> "Sold or offered for sale in the state" means any sale of or offer to sell an appliance for end use in the state, regardless of the seller's physical location, and includes, without limitation, internet, telephone, and mail order transactions. For purposes of this section, the Uniform Commercial Code-Sales . . . does not define "sold or offered for sale" or determine where sales or offers for sale occur.

Cal. Pub. Res. Code § 25402(c)(1)(A)(i). Defendants filed an unopposed request for judicial notice of Senate Bill 1063, which amended § 25402 and added this additional language. (Doc. No. 65-2.) Defendants' request for judicial notice will be granted. *See* Fed. R. Evid. 201(b).

sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Lastly, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)).

**ANALYSIS**

**A.     Dormant Commerce Clause**

The Constitution grants Congress the power "[t]o regulate Commerce . . . among the several States . . . ." U.S. Const., Art. I, § 8, cl. 3. "[T]he Commerce Clause not only vests Congress with the power to regulate interstate trade; the Clause also 'contain[s] a further, negative command,' one effectively forbidding the enforcement of 'certain state [economic

5

regulations] even when Congress has failed to legislate on the subject.'" *Nat'l Pork Producers Council v. Ross*, ___ U.S. ___, 143 S. Ct. 1142, 1152 (2023) (quoting *Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 179 (1995)). "This limitation on state power [to regulate commerce] has come to be known as the dormant Commerce Clause." *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012).

The Supreme Court has "stated there are 'two primary principles that mark the boundaries of a State's authority to regulate interstate commerce.'" *Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1026 (9th Cir. 2021) (quoting *S. Dakota v. Wayfair, Inc.*, ___ U.S. ___, 138 S. Ct. 2080, 2090 (2018)), *aff'd*, ___ U.S. ___, 143 S. Ct. 1142 (2023). "First, state regulations may not discriminate against interstate commerce; and second, States may not impose undue burdens on interstate commerce." *Id.* (citation omitted). Whereas "[s]tate laws that discriminate against interstate commerce face 'a virtually *per se* rule of invalidity[,]' . . . [s]tate laws that 'regulat[e] even-handedly to effectuate a legitimate local public interest . . . will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'" *Wayfair*, 138 S. Ct. at 2091 (citations omitted). "[T]hese two principles are 'subject to exceptions and variations[,]'" including "that a state law may violate the dormant Commerce Clause when it has extraterritorial effects." *Nat'l Pork Producers Council*, 6 F.4th at 1026 (quoting *Wayfair*, 138 S. Ct. at 2091); *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107, 1118 (9th Cir. 2022) ("*Canards*") ("A state law may also violate the dormant Commerce Clause when it . . . has extraterritorial effects[.]"), *cert. denied sub nom. Ass'n Des Éleveurs v. Bonta*, ___ U.S. ___, 2023 WL 3571483 (May 22, 2023).

In *National Pork Producers Council,* the Ninth Circuit explained, however, that state laws regulating in-state conduct that result in extraterritorial effects generally do not run afoul of the dormant Commerce Clause:

> Under our precedent, state laws that regulate only conduct in the state, including the sale of products in the state, do not have impermissible extraterritorial effects. A state law may require out-of-state producers to meet burdensome requirements in order to sell their products in the state without violating the dormant Commerce Clause. Even if a state's requirements have significant upstream effects outside of the state, and even if the burden of the law falls

6

> primarily on citizens of other states, the requirements do not impose *impermissible* extraterritorial effects.

6 F.4th at 1029 (internal citations omitted).  In affirming the Ninth Circuit's decision in that case, the Supreme Court noted that the so-called "extraterritoriality doctrine" that had been drawn from prior Supreme Court decisions merely "typifie[d] the familiar concern with preventing purposeful discrimination against out-of-state economic interests." *Nat'l Pork Producers Council*, 143 S. Ct. at 1154–57.  In doing so, the Supreme Court rejected the argument that the dormant Commerce Clause imposed an "almost *per se*" rule prohibiting the enforcement of state laws with extraterritorial effects.  *See id.* (rejecting the argument that state laws that do not purposely discriminate against out-of-state economic interests but which have the practical effect of controlling commerce outside the State are invalid under the dormant Commerce Clause).

However, in clarifying that such laws with extraterritorial effects are not prohibited under the dormant Commerce Clause, the Supreme Court distinguished them from those in which "a law [] *directly* regulated out-of-state transactions by those with *no* connection to the State." *Id.* at 1157 n.1.  Indeed, "[a] state law is not impermissibly extraterritorial *unless it directly regulates conduct that is wholly out of state*." *Nat'l Pork Producers Council*, 6 F.4th at 1029 (emphasis added); *see also Canards*, 33 F.4th at 1118 ("Although '[s]tates may not mandate compliance with their preferred policies in wholly out-of-state transactions, . . . they are free to regulate commerce and contracts within their boundaries with the goal of influencing the out-of-state choices of market participants.'") (quoting *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1103 (9th Cir. 2013)).  "A local law directly regulates interstate commerce when it 'directly affects transactions that take place across state lines or entirely outside of the state's borders.'" *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 445 (9th Cir. 2019) (citation omitted).  That said, "a state may regulate commercial relationships 'in which at least one party is located in California.'" *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145 (9th Cir. 2015).

**B.      Whether the SAC Alleges a Plausible Dormant Commerce Clause Violation**

In the SAC, plaintiff alleges that the CEC's application of California's appliance efficiency regulations to its sales of showerheads into California from orders accepted on its

7

website "constitutes an extraterritorial regulation of commerce" that violates the dormant Commerce Clause. (Doc. No. 63 at ¶ 32.) Specifically, plaintiff asserts that the particular sales the CEC is seeking to regulate "take place entirely outside of California" even though "the transaction results in the showerhead being shipped to a recipient in California" because the showerheads are only shipped to California after title has passed from seller to purchaser out-of-state. (*Id.* at ¶¶ 26, 32–33.)

In defendants' pending motion to dismiss the SAC, they contend that plaintiff's argument is foreclosed under binding precedent, specifically, the Ninth Circuit's decisions in *Canards* and *Chinatown Neighborhood Association*.[4] (Doc. No. 65-1 at 12–14.) In *Canards*, the Ninth Circuit concluded that a California law providing that foie gras "may not be sold in California" did not violate the dormant Commerce Clause because it "prohibits only in-state sales of foie gras . . . so it is not impermissibly extraterritorial even if it influences out-of-state producers' conduct." 33 F.4th 1107 at 1118–19. Similarly, in *Chinatown Neighborhood Association*, the Ninth Circuit upheld a California statute that made it "'unlawful for any person to possess, sell, offer for sale, trade, or distribute a shark fin' in the state." 794 F.3d at 1145–46 (citation omitted). In that

---

[4] In moving to dismiss defendants also argue that California's appliance efficiency regulations are not subject to the dormant Commerce Clause at all because the Department of Energy expressly waived federal preemption for state showerhead standards pursuant to authority granted under the Energy Policy and Conservation Act ("EPCA"), 42 U.S.C. §§ 6291–6309. (Doc. No. 65-1 at 10–11); *see also* 75 Fed. Reg. 80289-01 (Dec. 22, 2010) (final rule waiving federal preemption of state regulations concerning water efficiency of showerheads, among other consumer products). However, mere waiver of federal preemption does not automatically insulate a law from challenge under the dormant Commerce Clause; "[the Supreme] Court has exempted state statutes from the implied limitations of the [Commerce] Clause only when the congressional direction to do so has been 'unmistakably clear.'" *Maine v. Taylor*, 477 U.S. 131, 139 (1986) (citation omitted). Having reviewed the provision in the EPCA authorizing waiver of federal preemption by the Department of Energy, along with the other EPCA provisions identified by defendants, the court concludes that there has been no "unambiguous indication of congressional intent," *id.*, that states are not to be subjected to the limitations of the dormant Commerce Clause in the area of showerhead water efficiency. Notably, defendants do not point to any legislative history supporting their position that waiver of preemption was intended by Congress to grant states the power to regulate interstate commerce outside of their state for consumer products such as showerheads. *Cf. Cent. Valley Chrysler-Jeep v. Witherspoon*, 456 F. Supp. 2d 1160, 1183–86 (E.D. Cal. 2006) (finding that the legislative history demonstrated Congress's unmistakably clear permission to allow California to burden interstate commerce with fuel emission regulations even though the text of statute indicated only a waiver of preemption).

decision, the Ninth Circuit rejected the argument that the statute impermissibly regulated "extraterritorially by curbing commerce in shark fins between California and out-of-state destinations" because it concluded that "a state may regulate commercial relationships 'in which at least one party is located in California.'" 794 F.3d at 1145–46 (citation omitted).

Plaintiff contends that neither of these Ninth Circuit decisions are controlling under the facts as alleged in its SAC, which, in plaintiff's view, concern only sales occurring wholly outside of California.[5] (Doc. No. 67 at 12.) Plaintiff argues that the Ninth Circuit has "regularly struck down laws which barred transactions that occurred out of state." (*Id.* at 10.) First, plaintiff relies on the decision in *Sharpsmart, Inc. v. Smith*, 889 F.3d 608 (9th Cir. 2018), in which the Ninth

---

[5] In its opposition to the pending motion, plaintiff also requests that this court issue a declaratory judgment that California Public Resources Code § 25402 does not apply to their sales of showerheads through December 31, 2022. (Doc. No. 67 at 16–17.) The court will not address this request, however, because plaintiff does not seek this declaratory relief in its SAC. In fact, earlier in this litigation plaintiff voluntarily dismissed its claim that once explicitly sought a declaratory judgment regarding the applicability of § 25402 to its sales of showerheads into California. (*See* Doc. Nos. 61, 62.) As defendants point out, plaintiff dismissed that claim in response to arguments raised in defendants' prior motion to dismiss in which they argued that this federal court lacked jurisdiction to address the applicability of a state law. (Doc. No. 68 at 14); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (holding that the Eleventh Amendment bars suits against state officials on the basis of state law because "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law"). Nor does plaintiff's invocation of the constitutional avoidance doctrine provide a basis for this court to issue the declaratory relief plaintiff now, once again, requests. Plaintiff does not assert that the language of § 25402 is ambiguous, and even if it did, the court's plausible interpretation of the statute as discussed below does *not* raise constitutional concerns, and there are no alternative state law grounds alleged in the operative SAC before this court. *See Warger v. Shauers*, 574 U.S. 40, 50 (2014) ("[T]he canon of constitutional avoidance . . . is a tool for choosing between competing plausible interpretations . . . [and] has no application in the absence of . . . ambiguity."); *Potter v. City of Lacey*, 46 F.4th 787, 791 (9th Cir. 2022) ("It is well-established that [we] should avoid adjudication of federal constitutional claims when alternative state grounds are available."). Indeed, plaintiff's argument in this regard appears to conflate the principle of constitutional avoidance with abstention under *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941) ("*Pullman*") by relying on *Pullman*'s reasoning to contend that this federal court should issue an authoritative declaration as to the proper interpretation of state law. That is the opposite of what *Pullman* instructs. Thus, plaintiff's revived argument for a declaratory judgment that § 25402 does not apply to their sales of showerheads into California fails under either the doctrine of constitutional avoidance or *Pullman* abstention. *See id.* at 500–01 (explaining that if constitutional issues arise when state law is interpreted in a particular way, and state courts are silent on that topic, then federal courts may abstain leaving the parties free to litigate the state law issue in state court).

1  Circuit found that the plaintiff was likely to succeed on the merits of its dormant Commerce
2  Clause claim where California had sought to impose its medical waste disposal laws on such
3  waste that originated in California and was transported and disposed of in other states in
4  accordance with the laws of those states because California was seeking to "reach beyond its
5  borders . . . [to] control transactions that occur wholly outside of the State." 889 F.3d at 615–16.
6  Plaintiff's reliance on the decision in *Sharpsmart* is unavailing, however, because the Ninth
7  Circuit specifically distinguished the facts in that case from "an attempt by the Department
8  officials to protect California and its residents by applying the [medical waste disposal laws] to
9  products that are brought into or are otherwise within the borders of the State." *Sharpsmart*, 889
10 F.3d at 615. Rather, as the Ninth Circuit explained, "we are faced with an attempt to reach
11 beyond the borders of California and control transactions that occur wholly outside of the State
12 after the material in question—medical waste—has been removed from the State." *Id.* Here, in
13 contrast, plaintiff alleges that the CEC seeks to impose California's appliance efficiency
14 regulations on showerheads bound for California. Unlike in *Sharpsmart*, the application of
15 California's appliance efficiency regulations to plaintiff's showerheads is being done "to protect
16 California" regarding products "that are brought into . . . the State." *Id.*

17        Second, plaintiff relies on the decision in *Sam Francis Foundation v. Christies, Inc.*, 784
18 F.3d 1320 (9th Cir. 2015), in which the Ninth Circuit held that a California law requiring the
19 seller of fine art to pay the artist a five percent royalty if "the seller resides in California" violated
20 the dormant Commerce Clause "as applied to out-of-state sales by California residents." 784
21 F.3d at 1323. Plaintiff's reliance on the decision in *Sam Francis* is similarly unavailing because
22 that case is also distinguishable from the one presented here. There, the Ninth Circuit invalidated
23 a state law "as applied to out-of-state sales by California residents" but did so based on the
24 assumption that the sales had "no necessary connection with the state other than the residency of
25 the seller." *Sam Francis,* 784 F.3d at 1323. The court then provided the following example of
26 "out-of-state sales" that rendered the law unconstitutional:

27     For example, if a California resident has a part-time apartment in
       New York, buys a sculpture in New York from a North Dakota artist
28     to furnish her apartment, and later sells the sculpture to a friend in

10

> New York, the Act requires the payment of a royalty to the North Dakota artist—even if the sculpture, the artist, and the buyer never traveled to, or had any connection with, California.

*Sam Francis,* 784 F.3d at 1323. In other words, in invalidating California's royalty law, the Ninth Circuit in *Sam Francis* did not contemplate or address the scenario presented by the allegations of plaintiff's SAC: where the recipient of the product from the transaction—and the product itself—both end up in California.

In contrast to the decisions relied upon by plaintiff, the decisions cited by defendants are both on point and persuasive, particularly because in this case what is at issue is plaintiff's sale of showerheads to purchaser/recipients located inside California. *See Chinatown Neighborhood Ass'n*, 794 F.3d at 1145 ("[A] state may regulate commercial relationships 'in which at least one party is located in California.'") (quoting *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1224 (9th Cir. 2003)). Given this direct connection to the California, the court is not at all persuaded by plaintiff's argument that the sales of its showerheads *into California* are somehow *entirely out-of-state*. *See Nat'l Pork Producers Council*, 6 F.4th at 1029 ("A state law is not impermissibly extraterritorial unless it directly regulates conduct that is *wholly* out of state.") (emphasis added); *see also Rosenblatt*, 940 F.3d at 445 (finding that a city ordinance prohibiting short-term vacation rentals did not directly regulate wholly out-of-state transactions even though 95% of the vacation rentals involved out-of-state parties conducting transactions over the internet); *Lil' Brown Smoke Shack v. Wasden*, No. 09-cv-00044-CWD, 2010 WL 427388, at *4 (D. Idaho Feb. 1, 2010) (finding that a state law imposing various requirements on tobacco sellers, including out-of-state sellers to in-state buyers, was not likely to violate the dormant Commerce Clause because that law did "not regulate any other commerce that is not tied to the Plaintiff's sales of tobacco products to Idaho consumers," and thus was unlikely to regulate commerce occurring wholly outside of the state).

In addition, plaintiff is subject to California's appliance efficiency regulations because it has affirmatively chosen to engage in transactions that result in shipping its showerheads into California. *See S.D. Myers, Inc. v. City & Cnty. of San Francisco*, 253 F.3d 461, 469 (9th Cir. 2001) (upholding an ordinance requiring those contracting with the city to provide

11

nondiscriminatory benefits to employees with registered domestic partnerships, in part, because the ordinance "will affect an out-of-state entity only after that entity has affirmatively chosen to subject itself to the Ordinance by contracting with the City").  None of the allegations of plaintiff's SAC indicate that the practical effect of applying California's appliance efficiency regulations to plaintiff's sales would in any way extend beyond its specific products being shipped into California.  *Cf. Nat'l Collegiate Athletic Ass'n v. Miller*, 10 F.3d 633, 639 (9th Cir. 1993) (holding that a Nevada law's "practical requirement that the NCAA would have to use the [Nevada law] in enforcement proceedings in every state" violated the dormant Commerce Clause because it would in effect control "the regulation of the integrity of a product in interstate commerce that occurs wholly outside Nevada's borders"); *see also People ex rel. Brown v. PuriTec*, 153 Cal. App. 4th 1524, 1533–34 (2007) (finding that a state law prohibiting the sale of certain water treatment devices advertised with health claims unless certified by a state agency did not have "the practical effect of directly controlling commerce wholly outside California" when applied to an out-of-state seller's internet advertising directed at California customers). Notably, plaintiff in this case has failed to provide any legal authority in support of its contention that a state law regulates conduct occurring "wholly" out-of-state when the state law applies to transactions resulting in a product being shipped directly into the state.

The court therefore concludes that plaintiff has failed to allege a cognizable dormant Commerce Clause violation claim based on defendants' application of California's appliance efficiency regulations to its sales of showerheads over the internet because the transactions alleged in the SAC result in showerheads being shipped into California.  Thus, those transactions cannot be said to take place wholly and entirely outside of California.  Accordingly, defendants' motion to dismiss plaintiff's SAC will be granted.

### C. Whether Leave to Amend Should Be Granted

"Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'should be freely granted when justice so requires,' bearing in mind that 'the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities.'"  *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1062–63 (N.D. Cal. 2017) (quoting *Lopez v. Smith*,

203 F.3d 1122, 1127 (9th Cir. 2000)).  When "dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'"  *Lopez*, 203 F.3d at 1127 (citation omitted).  Moreover, "the district court may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, plaintiff has not requested leave to amend in its opposition to the pending motion, even though defendants have explicitly requested that this court grant their pending motion to dismiss "with prejudice."  (Doc. No. 65-1 at 16.)  Plaintiff also has not offered any additional factual allegations that it wishes to put forth in a third amended complaint, nor has it described any additional facts from which the court could infer that additional allegations exist and could in good faith be included in a third amended complaint.  Under the legal theory advanced by plaintiff in this case, the court cannot conceive of any additional factual allegations that would save plaintiff's sole remaining claim from dismissal or alter the court's analysis as explained in this order.  Indeed, the critical allegation in plaintiff's SAC—that the alleged sales involved shipping showerheads into California—serves not only as the basis for plaintiff bringing this lawsuit but also as the key allegation underlying the court's reasoning for granting the pending motion to dismiss.  As such, it appears that granting leave to amend under these circumstances would be futile.  *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) ("A motion for leave to amend may be denied if it appears to be futile or legally insufficient."); *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (finding that the district court did not abuse its discretion in denying leave to amend in a challenge to a California law prescribing conditions for chickens to be kept for their eggs to be sold in the state due to lack of standing).

Therefore, plaintiff will not be granted leave to file a third amended complaint.

/////

**CONCLUSION**

For the reasons explained above,

1. Defendants' request for judicial notice (Doc. No. 65-2) is granted;

2. Defendants' motion to dismiss (Doc. No. 65) is granted without leave to amend;

3. The Clerk of the Court is directed to update the docket to reflect that defendants Melissa Rae King and Xavier Becerra were terminated from this action on May 25, 2021; and

4. The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

Dated: **June 23, 2023**

_Dale A. Drozd_
UNITED STATES DISTRICT JUDGE